# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ODALY PHETSAVONG, | ) | 1:04cv6081 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Odaly Phetsavong ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") regarding her application for supplemental

security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On December 21, 2004, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

2      Plaintiff filed her application on April 18, 2002, alleging disability since January 10,

3  2001, due to "feeling nervous, anxious, get scare about people.  Irritable and easy to get angry,

4  hear voice, having flashback regarding to the war in Laos, low-pain back, depression, high blood

5  pressure."  AR 64-68, 78-85.  After being denied both initially and upon reconsideration,

6  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 47-50, 52-55, 56.

7  On June 12, 2003, ALJ Michael J. Haubner held a hearing.  AR 187-209.  On September 19,

8  2003, ALJ Haubner found that Plaintiff was not disabled.  AR 12-19.  On June 25, 2004, the

9  Appeals Council denied review.  AR 5-7.

10      Hearing Testimony

11      ALJ Haubner held a hearing on June 12, 2003, in Fresno, California.  Plaintiff appeared

12  along with her attorney, Gina Fazio.  AR 187.  A Laotian interpreter assisted at the hearing.  AR

13  194.

14      Prior to Plaintiff's testimony, counsel indicated that she was waiting for records from Dr.

15  Tieu and "Dr. Dowell."  The ALJ agreed to hold the record open for two weeks.  AR 189.  ALJ

16  Haubner also requested clarification on a questionnaire completed by Dr. Tieu.  AR 189-190.

17      Plaintiff testified that she was 39 years old at the time of the hearing and although her

18  records indicated that she completed the sixth grade in Laos, Plaintiff first stated that she had "no

19  school," but then stated that she had "about two years in Laos."  AR 196.  She testified that she

20  did not speak or understand any English.  When the ALJ questioned this based on the fact that

21  Plaintiff had to take a test in English when she became a naturalized citizen in 1996, she

22  indicated that she spoke or understood English in the past.  AR 196-197.  Plaintiff has not had

23  any diagnostic testing such as x-rays, MRIs or CT scans.  AR 197.

24      Plaintiff explained that she thought about suicide or killing other people about twice a

25  month, for the past three years.  AR 197-198.

26

27

28

      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

2

1      Plaintiff testified that she never had a job.  However, the ALJ presented her with evidence

2  of income tax earnings records that showed earnings for self-employment in 1998, 1999 and

3  2000.  AR 198.    Plaintiff again stated that she didn't work, but explained that she gave her

4  social security number to a Laotian person at a Laotian store, who indicated that "if we're going

5  to get money the money will come to your home."  Plaintiff explained that she didn't know if this

6  was wrong or right, and that she didn't know that the man would indicate that she was self-

7  employed.  AR 198-199.

8      Plaintiff lives with her husband and her children.  She has four children.  AR 2000.  She

9  feeds herself, bathes and puts her own clothes on.  AR 200-201.  She does not drive or take pubic

10  transportation and has never had a driver's license.  AR 201.  She goes grocery shopping with her

11  children once a week.  AR 201.  Although she used to cook and prepare meals when she was

12  healthy, she no longer does so.  AR 201.  She does, however, do simple meal preparation about

13  once a day.  AR 202.  She does not sweep or take out the trash, but makes her bed about once a

14  week.  AR 202.

15      She indicated that she takes all of her medication in the correct amounts and at the correct

16  times.  AR 203.  She thought her condition had stayed about the same since she filed for benefits.

17  AR 203.  Her husband does not work and receives SSI for depression, problems sleeping,

18  nightmares, anger and frustration.  AR 204. Plaintiff explained she could not work because she

19  felt tired and weak, and has pain in her back, dizziness and vision problems.  AR 204.

20      When questioned by her attorney, Plaintiff explained that when she took the

21  naturalization test, she felt well and studied.  AR 205.  Now, she has problems with her memory

22  and has forgotten to turn the stove off and burned her hand.  AR 205.  Her long-term memory is

23  also bad.  AR 206.  She has nightmares about three times a week and sleeps a lot when she takes

24  her medicine. AR 206.  She hears voices about three times a week.  AR 207.  She does not visit

25  friends, but they come and visit her about twice a week.  When she is not sleeping during the day,

26  she just stays at home and does nothing.  AR 207.

27

28

1       Medical Record

2       From 1999 through 2002, Plaintiff received routine medical care at Kings Winery

3   Medical Clinic.  During this time, she received treatment for hypertension, body aches,

4   headaches and feeling tired.  AR 130-145.  On December 14, 2000, her hypertension was

5   described as "improved."  AR 139.  Similarly, her hypertension was described as controlled on

6   March 16, 2001, August 20, 2001, November 15, 2001, March 13, 2002, June 11, 2002, AR 130,

7   132, 134, 136, 138.

8       Plaintiff saw Hoang Tieu, M.D., on March 1, 2002 for a psychiatric evaluation.  She

9   complained that she was depressed, irritable and easily angered.  She explained that her

10  nightmares and flashbacks started shortly after family members were killed by communists in

11  Laos.  She had been feeling depressed for the past three years and was hopeless with low energy

12  and fatigue.  She was sometimes suicidal although she denied it at the evaluation.  Dr. Tieu

13  diagnosed post traumatic stress disorder ("PTSD") and major depressive disorder, single episode,

14  severe with psychotic features.  He prescribed medication and encouraged Plaintiff to take her

15  medications regularly. AR 178.

16      On April 1, 2002, Plaintiff told Dr. Tieu that she was taking her medications but still felt

17  depressed, hopeless, irritable and easily angered.  He noted that she was still depressed, irritable,

18  psychotic and had insomnia.  AR 175.  He increased her medications.  AR 175.

19      Plaintiff saw Dr. Tieu on April 30, 2002, and complained that she was still depressed and

20  hopeless despite her medications.  He noted that she was still depressed and irritable and

21  increased her medications.  AR 174.

22      On May 30, 2002, Plaintiff returned to Dr. Tieu and indicated that she took her

23  medications but was still nervous, anxious, irritable and easily angered.  He increased her

24  medications and encouraged her to take them regularly.  AR 173.

25      On June 26, 2002, Plaintiff saw Shireen R. Damania, M.D., for a consultive psychiatric

26  evaluation.  At the beginning of the evaluation, Plaintiff told Dr. Damania that she did not know

27  whether her husband worked and how many children they had, but she eventually indicated that

28  her husband receives SSI and they have six children.  Plaintiff reported that she had a problem

4

1  with getting angry and problems with sleep and nightmares.  She also indicated that she had

2  headaches and body aches.  She did not attend group therapy sessions because they made her

3  angry.  She denied suicidal or homicidal ideations, but indicated that she heard and saw ghosts.

4  AR 123-124.

5       On mental status examination, Plaintiff's mood was mildly depressed at times, but when

6  she was confronted, she became angry and talked loudly.  Her impulse and frustration control

7  were within normal limits.  No delusional thinking was noted and there was no evidence of a

8  thought disorder.  Her memory for recent and past recall was intact, but she incorrectly identified

9  the date.  Her attention span was within normal limits and she was of average intelligence.  Her

10 insight and judgment were adequate.  Dr. Damania diagnosed adjustment disorder with depressed

11 mood.  AR 125.

12      Dr. Damania noted that Plaintiff was neatly and fashionably dressed and groomed, quite

13 assertive, and had no difficulties in memory, concentration, persistence and pace.  She opined,

14 "[a]t times it appeared that she was attempting to enhance her symptoms by stating, 'I do not

15 remember how many children I have because I have a bad memory.'"  AR 126.  Dr. Damania

16 indicated that Plaintiff could understand, remember and carry out simple as well as one- and two-

17 step job instructions with no difficulty.  She had no limitations as a result of a personality

18 disorder.  AR 126.

19      On August 5, 2002, State Agency physician Evelyn Aquino-Caro, M.D., completed a

20 Mental Residual Functional Capacity Assessment Form.  She opined that Plaintiff was

21 moderately limited in her ability to understand, remember and carry out detailed instructions.

22 AR 154-156.  However, Plaintiff retained the ability to understand simple instructions,

23 concentrate for two hour intervals, relate to supervisors , co-workers, and the public, and adapt to

24 simple work changes. AR 156.  On November 14, 2002, State Agency physician Sadda Reddy,

25 M.D., affirmed these findings.  AR 156.

26      From October 2002 to May 2003, Plaintiff continued to receive routine health care from

27 Kings Winery Medical Clinic.  AR 165-169.  During this time, she complained of runny nose,

28

1 sneezing, headaches, lower back pain, and blurry eyes.  She was prescribed multiple medications.

2 AR 168.

3       Plaintiff saw Dr. Tieu on March 13, 2003.  She indicated that the medications were

4 helping her and that she was sleeping better at night and sometimes walking around the house,

5 cooking and cleaning.  Dr. Tieu noted that Plaintiff was doing better gradually and instructed her

6 to continue her medications.  AR 172.

7       Plaintiff returned to Dr. Tieu on April 11, 2003, and indicated that she was taking her

8 medication, but still felt depressed, tired, isolative and unmotivated.  He noted she was still

9 depressed and increased her medications.  AR 171.

10       On May 8, 2003, Plaintiff returned to Dr. Tieu.  Plaintiff again reported that she was

11 taking her medications regularly but still felt depressed, had low energy and was tired.  She also

12 indicated that she had been feeling suicidal, but denied suicidal ideations at the exam.  AR 170.

13 He described her as still depressed and increased her medications.  AR 170.

14       On May 31, 2001, Dr. Tieu completed a medical report and indicated that Plaintiff was

15 still depressed, crying, irritable, nervous, scared and anxious.  AR 179.  He indicated that her

16 ability to adjust to a job was poor in 11 out of 14 functional areas.  AR 180-181.  He said that she

17 heard voices and had difficulty concentrating and remembering things.  AR 181.

18       ALJ's Finding

19       The ALJ determined that Plaintiff had the severe impairments of adjustment disorder and

20 depression.  Plaintiff retained the residual functional capacity ("RFC") to perform unskilled work

21 at all exertional levels.  Although the ALJ found Plaintiff to be illiterate and unable to

22 communicate in English, he determined that her nonexertional limitations did not significantly

23 compromise her ability to perform work at all exertional levels.  AR 18-19.  Using Rule 204.00

24 as a framework, the ALJ determined that Plaintiff was not disabled.  AR 18-19.

25                              **SCOPE OF REVIEW**

26       Congress has provided a limited scope of judicial review of the Commissioner's decision

27 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

28 the Court must determine whether the decision of the Commissioner is supported by substantial

1   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

2   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

3   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

4   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

5   401.  The record as a whole must be considered, weighing both the evidence that supports and

6   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

7   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

8   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

9   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

10  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

11  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

12  Cir. 1987).

13                                     **REVIEW**

14          In order to qualify for benefits, a claimant must establish that he is unable to engage in

15  substantial gainful activity due to a medically determinable physical or mental impairment which

16  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

17  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

18  such severity that he is not only unable to do her previous work, but cannot, considering his age,

19  education, and work experience, engage in any other kind of substantial gainful work which

20  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

21  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

22  Cir. 1990).

23          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

24  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

25  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

26  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

27

28

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

1   disability[4]; (2) has an impairment or a combination of impairments that is considered "severe"

2   (adjustment disorder and depression) based on the requirements in the Regulations (20 CFR §§

3   416.920(b)); (3) does not have an impairment or combination of impairments which meets or

4   equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no

5   past relevant work; and (5) retains the RFC to perform a significant number of positions in the

6   national economy.  AR 18-19.

7         Plaintiff argues that the ALJ (1) did not provide due process in reviewing her testimony;

8   and (2) misapplied the law regarding the treating physician's opinion.

9         Prior to review Plaintiff's arguments, the Court notes that Plaintiff's opening brief does

10  not comply with paragraph 11 of the Court's August 12, 2004, Scheduling Order.

11                                  **DISCUSSION**

12  A.    Evaluation of Plaintiff's Testimony

13        Plaintiff begins her argument with the statement, "The ALJ battered this illiterate,

14  uneducated, mentally ill lady, who obviously could not understand the opening battery of

15  courtroom mandates lobbied at her."  Opening Brief, 3.  Plaintiff then goes on to argue that the

16  ALJ "overstepped reason by attempting to militarily apply courtroom procedures," resulting in an

17  unfair review of her testimony.  Opening Brief, 3.

18        The ALJ is required to make specific findings assessing the credibility of plaintiff's

19  subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting

20  the complainant's testimony, "the ALJ must identify what testimony is not credible and what

21  evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

22  1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

23  1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

24  severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

25  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

26  discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

27

28        [4] Although Plaintiff's earnings records showed substantial gainful activity in 1998, 1999 and 2000, in light
    of the ambiguity, the ALJ determined that the burden should shift to the Commissioner to show that Plaintiff could
    perform a significant number of jobs in the national economy.  AR 17.

1    "The ALJ may consider at least the following factors when weighing the claimant's

2    credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

3    testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

4    record, and testimony from physicians and third parties concerning the nature, severity, and effect

5    of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

6    789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in

7    the record, we may not engage in second-guessing." *Id.*

8         First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure

9    through which an ALJ must assess the claimant's credibility.  While courts give the SSRs some

10   deference, they do not have the force of law.  *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1

11   (9th Cir. 2001).

12        Second, insofar as Plaintiff contends that the ALJ's opening instructions somehow

13   intimidated Plaintiff and resulted in an unfair review of her testimony, her argument fails to

14   understand the duties of the ALJ.  Pursuant to the regulations, the ALJ looks fully into the issues,

15   questions the claimant and other witnesses, and accepts as evidence any documents that are

16   material to the issue.  20 C.F.R. § 404.944.  The ALJ may decide when the evidence will be

17   presented and when the issues will be discussed.  *Id.*  The ALJ was simply carrying out his duties

18   in questioning Plaintiff and explaining at the outset how the hearing would proceed.

19        Indeed, as Plaintiff concedes, there were inconsistencies in Plaintiff's testimony,

20   including conflicting evidence regarding whether she had previously worked and whether she

21   could speak English.  AR 197, 199.  Yet rather than "badger" the Plaintiff, the ALJ questioned

22   her regarding his legitimate confusion.  Although this might have been in a slightly skeptical

23   tone, it certainly did not rise to the level of badgering and Plaintiff's counsel did not object to the

24   ALJ's questioning.

25        In his decision, the ALJ noted Plaintiff's inconsistent statements regarding her education

26   and her ability to speak English.  AR 17.  He explained that in her Disability Report, she

27   indicated hat she completed the sixth grade in Laos, but testified that she only completed the

28   second grade.  AR 17.  The ALJ further explained that Plaintiff testified that she was never able

9

1  to speak/understand English, until the ALJ confronted her with her 1996 Naturalization

2  Certificate, which, given her age, meant that she would have taken the test in English.  AR 17.

3  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may discredit claimant's testimony

4  based on inconsistent statements).

5          Plaintiff also contends that the ALJ's reference to Plaintiff's "evasive" demeanor at the

6  hearing was improper.  Plaintiff is incorrect, as an ALJ may properly cite claimant's demeanor at

7  the hearing as part of a credibility determination.  *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th

8  Cir. 1992).

9          The ALJ also determined that Plaintiff's denial of all cooking, shopping and chores in her

10  Disability Report detracted from her credibility, given her testimony that she does simple meal

11  preparation once a day, shops with her children once a week, makes beds once a week and takes

12  care of all of her own personal needs.  AR 17.  *Smolen,* 80 F.3d at 1284; *Thomas,* 278 F.3d at

13  958.

14          Similarly, Plaintiff testified that she had suicidal and homicidal ideations twice a month

15  for the past three years, yet the medical evidence contradicts this.  AR 17.  Indeed, while the

16  medical evidence references suicidal ideations, Plaintiff always denied any such ideations during

17  therapy and even denied any history of such thoughts to Dr. Damania in June 2002.  AR 124,

18  170, 178.  She also testified that her long term memory was bad, but the ALJ noted Dr. Tieu's

19  March 2002, finding that her long term memory was "ok."  AR 17, 178.  *Thomas,* 278 F.3d at

20  958.  Finally, the ALJ noted that at her consultive psychiatric examination, Plaintiff could not

21  remember how many children she had, but responded without hesitation at the hearing that she

22  had four children.  AR 17.  *Id.*

23          While Plaintiff may not agree with the ALJ's interpretation of the evidence, it is his duty,

24  as the trier of fact, to assess credibility.  *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989).  The

25  Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational

26  interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Here, the ALJ made

27  sufficient findings to allow the Court to determine that his analysis was not arbitrary.  *Thomas,*

28  278 F.3d at 958.

1    B.       Treating Physicians Opinion

2             Plaintiff next argues that the ALJ did not understand or properly apply *Crane v. Shalala*,

3    76 F.3d 2512 (9th Cir. 1996), in rejecting Dr. Tieu's May 2003, questionnaire.  Plaintiff contends

4    that Dr. Tieu's opinion is supported and should be given substantial weight.

5             Prior to addressing Plaintiff's argument, the Court notes that Plaintiff takes a somewhat

6    insulting and sarcastic tone in her argument, which is replete with extra-record evidence and

7    which seems to evidence an underlying personal disagreement with ALJ Haubner.  For example,

8    Plaintiff poses the following rhetorical question: "One would wonder if the ALJ would have been

9    able to completely follow rules given him if the reverse situation found him in a tribal court in

10   the hills of Laos."  Opening Brief, 6.  Plaintiff's counsel is reminded that this Court is not a

11   forum for venting personal and/or professional frustrations.  Personal attacks are both

12   unnecessary and unprofessional and undoubtedly detract from the merits of the underlying action.

13            The medical opinion of a claimant's treating physician is entitled to "special weight."

14   *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088

15   (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact

16   that he is employed to cure but also on his greater opportunity to observe and know the patient as

17   an individual.  However, a treating physician's opinion is not conclusive as to a physical

18   condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v.*

19   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating

20   physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the

21   rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

22            Here, the ALJ rejected Dr. Tieu's opinion that Plaintiff could not perform substantial

23   gainful activity.  AR 16.  At the beginning of the hearing, the ALJ explained to Plaintiff's

24   counsel that he would like clarification of the questionnaire.  He explained that the handwritten

25   notations were largely illegible and that it lacked sufficient explanation and support.  AR 189-

26   190.  The ALJ stated that he would hold the record open for two weeks to receive such

27   clarification and that he would not afford the opinion much weight without the requested

28   information.  AR 190.

1    Plaintiff's counsel did not provide the requested clarification and, citing *Crane v. Shalala*

2  and other supporting case law, the ALJ afforded little weight to the exhibit.  AR 16.  The ALJ

3  specifically explained that many of the notes were illegible, the report lacked bases for the

4  limitations, and a certain section was left blank.  AR 16.  He also set forth each of the areas in

5  which he had asked for clarification and indicated that Plaintiff's counsel had not provided this

6  information.  AR 16.

7    Plaintiff's argument, and her contention that the ALJ should have recontacted Dr. Tieu, is

8  disingenuous since counsel did not provide the ALJ with the requested information.  Counsel had

9  an opportunity to correct the issues yet failed to do so, and should not now cry foul.

10   In any event, Plaintiff's argument is without merit.  The ALJ properly rejected Dr. Tieu's

11  limitations and explained that his opinion was unsupported.  AR 16.  A brief and conclusionary

12  form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating

13  physician's conclusion.  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Indeed, as the

14  ALJ noted, Dr. Tieu did not set forth any signs or test result, or indicate whether the limitations

15  were based on objective findings or observations, or Plaintiff's subjective complaints.  AR 16.

16  Dr. Tieu's treatment notes indicate on mental status examination, she was consistently alert, had

17  good eye contact, was cooperative, fairly groomed with fair hygiene, and her speech was

18  normoproductive, coherent and relevant.  AR 170-175, 177.  As Respondent points out, after she

19  began taking medication, Dr. Tieu described her affect as appropriate, even though Plaintiff

20  continued to subjectively describe her mood as depressed.  AR 171, 172, 175.  *Sample*, 694 F.2d

21  at 644 (mental impairment that was "minimized" by medications was not disabling).  The lack of

22  objective medical evidence in support of Dr. Tieu's opinion was a specific and legitimate reason

23  to reject it.  *Magallenes*, 881 F.2d at 751.

24   Finally, Plaintiff submits a report by Robert L. Morgan, Ph.D., who performed a

25  psychological evaluation of Plaintiff on March 7, 2005.  Plaintiff explains that she obtained this

26  report because of the "lack of proper consideration" by the ALJ and contends that this report

27  supports Dr. Tieu's opinion.  In requesting remand based on this new evidence, Plaintiff simply

28

1    explains that the evidence is new and material evidence that "bears directly upon Plaintiff's claim

2    of disability since the alleged onset of disability."  Opening Brief, 7-8.

3         Pursuant to the provisions of 42 U.S.C. § 405 (g), as amended in 1980, a case may be

4    remanded to the Secretary if the new evidence submitted is material, and there is good cause for

5    the failure to incorporate it into the record.  In order to be "material," the new evidence must be

6    probative of the claimant's condition as it existed during the relevant time period -- on or before

7    the administrative hearing. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509,

8    511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's satisfaction

9    that there exists a "reasonable possibility that the new evidence would have changed the outcome

10   of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human*

11   *Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).  The good cause requirement is satisfied if the

12   claimant could not have obtained the medical evidence at the time of the administrative

13   proceeding, even though the evidence surfaces after the Secretary's final decision. *See Embry v.*

14   *Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, *supra*, 734 F.2d at 1380.

15        Here, the new report is not material.  It was based on an examination almost a year and a

16   half *after* the ALJ's decision.  The report therefore could not have changed the ALJ's decision.

17   Nor is the report probative of the claimant's condition as it existed during the relevant time

18   period -- on or before the administrative hearing.

19        Plaintiff has also failed to demonstrate good cause for not submitting the evidence earlier.

20   Simply submitting a more favorable medical report obtained well after the ALJ's decision does

21   not establish good cause.  *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990).  Rather, the

22   claimant must establish good cause for not seeking the expert's opinion prior to the denial of the

23   claim. *Id.*  Where a claimant believes that such evidence supports a claim for disability, the

24   proper for submitting the evidence is in the context of a new application for benefits.  *Harman v.*

25   *Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

26                                    **CONCLUSION**

27        Based on the foregoing, the Court finds that the ALJ's decision is supported by

28   substantial evidence in the record as a whole and is based on proper legal standards.

1   Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

2   Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

3   favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,

4   Odaly Phetsavong.

5        IT IS SO ORDERED.

6        **Dated:    October 3, 2005**                      **/s/ Dennis L. Beck**
        3b142a                                       UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14